```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

**LIONEL AND CYNTHIA FRANCOIS**                                    **PLAINTIFFS**

VS.                                    CIVIL ACTION NO 3:06-cv-434-WHB-LRA

**COLONIAL FREIGHT SYSTEMS, INC.,**
**PHOENIX LEASING OF TENNESSEE, INC.,**
**and JOHN DOES 1-5**                                              **DEFENDANTS**

<u>OPINION AND ORDER</u>

This cause is before the Court on the Motion of Defendant Phoenix Leasing of Tennessee, Inc., for Summary Judgment. The Court has considered the Motion, Response, Rebuttal, attachments to each, as well as supporting and opposing authorities and finds that the Motion is well taken and should be granted.[1]

### I. Factual Background and Procedural History

The subject lawsuit arises out of a motor vehicle/tractor trailer accident that occurred on December 19, 2005. At the time of the accident, Ronald Chapman ("Chapman") was driving a tractor

---

[1] Plaintiffs request a hearing on the subject motion for summary judgment. Pursuant to Rule 7.2(F)(1) of the Uniform Local Rules of the United States District Court for the Northern and Southern Districts of Mississippi: "All motions shall be decided by the court without a hearing or oral argument unless otherwise ordered by the court ... in its discretion, upon written request made by counsel..." As the Court finds it can decide the subject motion for summary judgment on the pleadings, Plaintiffs' request for hearing is denied.

trailer for Defendant Colonial Freight Systems, Inc. ("Colonial") when he rear-ended a vehicle that was being driven by Plaintiff Lionel Francois ("Francois").  For the purposes of this litigation, Colonial has admitted that Chapman was its employee when the subject accident occurred.  Colonial has also admitted a duty and breach of duty on the part of Chapman, but denies the allegations with respect to damages.

The tractor Chapman was driving had been leased from Defendant Phoenix Leasing of Tennessee, Inc. ("Phoenix").  According to the record, Phoenix leases commercial tractors and, in turn, re-leases them to commercial drivers.  See Mot. for Summ. J., Ex. D (Hollow Dep.), at 22-23.  The driver can then use the tractor to haul trailers for any company needing to transport goods, including Colonial.  Id. at 20.  In this case, Chapman was made aware of the Phoenix leasing program through Colonial.  As a condition precedent for leasing the trailer from Phoenix, Chapman entered a lease agreement with Colonial, thereby leasing to Colonial the trailer and his services as a driver.  Id. at 24.  Thus, at the time of the accident, Chapman was driving a tractor leased from Phoenix, which was subsequently re-leased to Colonial, and was hauling a trailer for Colonial.

On August 8, 2006, Francois and his wife filed this lawsuit arising from the injuries allegedly sustained by Francois in the subject accident.  The Compliant, which was filed in this Court,

2

alleged claims of negligence; negligent hiring, retention, supervision, and control; gross negligence; respondeat superior; and loss of consortium against Colonial, and sought greater than $75,000 in compensatory and punitive damages.  On May 29, 2007, with leave of Court, Plaintiffs filed an Amended Complaint naming Phoenix as an additional defendant, and alleging the same causes of action against Phoenix.  Federal subject matter jurisdiction in this case is predicated on diversity of citizenship jurisdiction. As Plaintiffs are citizens of the State of Mississippi, Defendant Colonial is an Alabama corporation with its principal place of business in the State of Tennessee, and Defendant Phoenix is a Tennessee corporation with its principal place of business in the State of Tennessee, the Court finds that the diversity of citizenship requirement of 28 U.S.C. § 1332 is satisfied.  Further, as Plaintiffs seek greater than $75,000 in actual and punitive damages, see Amended Compl. at ¶ 1, the Court finds the amount in controversy requirement of 28 U.S.C. § 1332 is likewise satisfied. Accordingly, the Court finds it may properly exercise subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

Phoenix now moves for summary judgment on Plaintiffs' claims arguing that it was not Chapman's employer, but had merely leased the tractor involved in the subject accident to Chapman.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  The movant need not, however, support the motion with materials that negate the opponent's claim. Id.  As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point

to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Legal Analysis

Mississippi has long recognized the doctrine of respondeat superior under which an employee's negligence may be imputed to his employer for the purpose of establishing liability. See Commercial Bank v. Hearn, 923 So. 2d 202, 204 (Miss. 2006). This doctrine is based on:

> The fact that the employer has the right to supervise and direct the performance of the work by his employee in all its details, and this right carries with it the correlative obligation to see to it that no torts shall

5

>   be committed by the employee in the course of the performance of the character of work which the employee was appointed to do.

Gulledge v. Shaw, 880 So. 2d 288, 295 (Miss. 2004) (quoting White's Lumber & Supply Co. v. Collins, 191 So. 105 (Miss. 1939) (alterations in original). Thus:

>   An employer is liable for the torts of his employee only when they are committed within the scope of employment. Odier v. Sumrall, 353 So. 2d 1370, 1372 (Miss. 1978). To be "within the scope of employment," the act must have been committed in the course of and as a means to accomplishing the purposes of the employment and therefore in furtherance of the master's business. Sears, Roebuck & Co. v. Creekmore, 23 So. 2d 250, 252 (1945); Alden Mills v. Pendergraft, 115 So. 713, 714 (1928). Also included in the definition of "course and scope of employment" are tortious acts incidental to the authorized conduct. Creekmore, 23 So. 2d at 252.

Adams v. Cinemark USA, Inc., 831 So. 2d 1156, 1159 (Miss. 2002).

Phoenix moves for summary judgment on Plaintiffs' claims arguing that as it was not Chapman's employer, it cannot be held liable for his actions under Mississippi law. Plaintiffs, relying on the opinion of their expert witness Whitney Morgan ("Morgan"), respond by arguing that Phoenix could be considered Chapman's "employer" under the Federal Motor Carrier Safety Regulations ("FMSCR"). See Resp. to Mot. for Summ. J., Ex. A (Morgan Report), at 3. Morgan's opinion is based on FMSCR § 390.5, which provides, in relevant part:

>   Employee means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent

6

> contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler. Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment.
>
> Employer means any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it, but such terms does not include the United States, any State, any political subdivision of a State, or an agency established under a compact between States approved by the Congress of the United States.

49 C.F.R. § 390.5.

The Court finds that whether Phoenix could generally be defined as an "employer" under the under the FMCSR is of little consequence in this case. The ultimate issue that must be decided, for the purpose of applying the doctrine of respondeat superior, is whether Phoenix was specifically Chapman's employer at the time the subject accident occurred. See Hearn, 923 So. 2d at 204 (finding that an employee's negligence may be imputed to his employer for the purpose of establishing liability). Indeed, to be considered an "employee" under the FMCSRs, an individual must be "employed by an employer" and must be someone who, "in the course of his or her employment directly affects commercial motor vehicle safety." See 49 C.F.R. § 390.5. In the event Chapman was not an employee of Phoenix, Phoenix cannot be held liable for his conduct under Mississippi law.

7

Mississippi recognizes "three types of situations in which a party principal may seek to have someone else perform some service for him: (1) principal and agent, (2) master and servant, and (3) independent contractor." Richardson v. APAC-Mississippi, Inc. 631 So. 2d 143, 147 (Miss. 1994).  As explained in Richardson:

> The relationship most closely related to the master and servant relationship is, of course, that of principal and agent.  Both relate to employment and express the idea of service, and both agents and servants are workers for another under an express or implied agreement.  Indeed, the law of agency is an outgrowth and expansion of the doctrine of master and servant, and it is of course true that the words "agent" and "servant" in a general sense both apply to persons in the service of another.  A master is a species of principal, and a servant a species of agent.  As a result, the words "servant" and "agent" are often used interchangeably by the courts, and indeed, an agent employed to make contracts might also, with respect to some of his duties and activities, be a servant.  It is generally agreed that no basic or fundamental distinction is to be drawn between the liability of the principal for the tort of the agent and the liability of the master for the tort of his servant.
>
> On the other hand, the terms "agent" and "servant" are not wholly synonymous since an agent may be authorized to make contracts on behalf of the principal with third persons and to generally represent him in the business, while a mere servant has no such authority, but renders purely mechanical services as directed by his employer.  The essential difference between the two is that an agent represents his principal in business dealings and is employed to establish contractual relations between the principal and third persons, while a servant is not.
>
> As a general rule, a servant is employed to perform certain acts in a way that is or may be specified, and he may not use his discretion as to the means to accomplish the end for which he is employed.  This being so, the service performable by a servant for his employer may be inferior in degree to work done by an agent for his principal.

Id. at 147 n.2 (quoting 53 AM. JUR. 2D *Master and Servant* §§ 3-4 (1970)).

Under Mississippi law, to determine whether an individual is an "employee", courts apply the following tests:

> Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; whether he is obliged to pay the wages of said employees.

James W. Sessums Timber Co., Inc. v. McDaniel, 635 So. 2d 875, 881 (Miss. 1994) (quoting Kisner v. Jackson, 132 So. 90 (Miss. 1931)) (applying test to determine whether individual was an employee or independent contractor). Applying these tests in the order they are listed above to the evidence before it, the Court finds:

(1)  There was no contract of employment entered between Phoenix and Chapman. The only contract entered was the Commercial Vehicle Lease Agreement through which Chapman leased the tractor involved in the subject accident from Phoenix. See Mot. for Summ. J., Ex. C (Commercial Vehicle Lease Agreement).

9

(2) Chapman was paid for hauling by Colonial, not Phoenix. <u>See</u> Resp. to Mot. for Summ. J., Ex. B (Chapman Dep.), at 29 (testifying that he was paid by Colonial, and that his rate of pay was dependent upon the type/content of the trailer he was hauling); Mot. for Summ. J., Ex. D (Hollow Dep.), at 24 (testifying that drivers for Colonial were paid a percentage of the gross freight revenue derived from their work).

(3) Chapman leased a tractor from Phoenix, and used that tractor to haul trailers owned by Colonial. <u>See</u> Mot. for Summ. J., Ex. D (Hollow Dep.), at 20. The trailer that Chapman was hauling at the time of the subject accident belonged to Colonial. <u>Id.</u> at 24 (testifying that drivers for Colonial would haul trailers that were owned by Colonial unless the driver owned his own trailer).

(4) Phoenix did not maintain any control over the tractor after it was leased to Chapman. Chapman was required to maintain insurance on the tractor. <u>See</u> Mot. for Summ. J., Ex. C (Commercial Vehicle Lease Agreement), at ¶ 5. Chapman was also responsible for all repairs and maintenance on the vehicle. <u>Id.</u> Ex. D (Hollow Dep.), at 44-45; <u>Id.</u> Ex. C ((Commercial Vehicle Lease Agreement), at ¶ 4. <u>See</u> <u>also</u> Resp. to Mot. for Summ. J., Ex. B (Chapman Dep.), at 95 (testifying that all repairs to the subject tractor were performed by Colonial). Likewise, Phoenix does not have a safety department or accident-reporting requirements, and did not publish any safety information to drivers. Instead, these issues

10

were addressed by the motor carrier (in this case Colonial) for whom the driver was hauling. <u>See</u> Mot. for Summ. J., Ex. D (Hollow Dep.), at 63.

(5) Chapman did not haul any cargo for Phoenix, but instead worked exclusively for Colonial. <u>See</u> Resp. to Mot. for Summ. J., Ex. B (Chapman Dep.), at 31.

(6) Phoenix did not prescribe the kind/character of work to be performed by Chapman. <u>See</u> Resp. to Mot. for Summ. J., Ex. B (Chapman Dep.), at 29 (testifying that his rate of pay was dependent upon the type/content of the trailer he was hauling).

(7) Phoenix did not have any right to supervise and inspect the work performed by Chapman. Issues regarding safety were addressed by the carrier for whom Chapman was hauling. <u>See</u> Mot. for Summ. J., Ex. D (Hollow Dep.), at 63.

(8) Phoenix did not have any right to direct the details or the manner in which Chapman's work was to be done. Again, issues regarding safety were addressed by the carrier for whom Chapman was hauling. <u>See</u> Mot. for Summ. J., Ex. D (Hollow Dep.), at 63.

(9) Phoenix could cancel the lease if the driver breached the agreement. Phoenix had no disciplinary authority over Chapman. <u>See</u> Mot. for Summ. J., Ex. D (Hollow Dep.), at 72.

(10) Phoenix was not obliged to pay the wages of Chapman. Again, Chapman was paid for hauling by Colonial, not Phoenix. <u>See</u> Resp. to Mot. for Summ. J., Ex. B (Chapman Dep.), at 29 (testifying

that he was paid by Colonial, and that his rate of pay was dependent upon the type/content of the trailer he was hauling); Mot. for Summ. J., Ex. D (Hollow Dep.), at 24 (testifying that drivers for Colonial were paid a percentage of the gross freight revenue derived from their work).

Additionally, Chapman testified during his deposition that the only thing he knew about Phoenix was that it was the leasing company he leased his tractor through, and that he did not otherwise have any personal contact with Phoenix. See Resp. to Mot. for Summ. J., Ex. B (Chapman Dep.), at 31, 95.

Based on evidence in the record, the Court finds that Plaintiffs have failed to show that there exists a genuine issue of material fact with regard to whether Chapman was an employee of Phoenix for the purpose of imputing liability under the doctrine of respondeat superior.  Additionally, as there is no evidence that Phoenix hired, retained, supervised and/or controlled Chapman, the Court finds that Plaintiffs have failed to show that there exists a genuine issue of material fact with regard to their negligent hiring, retaining, supervision, and control claim.

Plaintiffs also argue that Phoenix can be held liable for Chapman's action by piercing the corporate veil of, presumably, Colonial.  Under Mississippi law, courts have refused to "pierce the corporate veil except in those extraordinary factual circumstances where to do otherwise would subvert the ends of

12

justice." Penn Nat'l Gaming, Inc. v. Ratliff, 954 So. 2d 427, 431 (Miss. 2007) (citing Gray v. Edgewater Landing, Inc., 541 So. 2d 1044, 1046 (Miss. 1989)).  Thus, Mississippi has adopted the general rule "that the corporate entity will not be disregarded in contract claims unless the complaining party can demonstrate: (1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." Id. (citing Gray, 541 So. 2d at 1047).  This same standard applies when piercing the corporate veil for the purpose of tort claims. Id. at 431-32.

In the case *sub judice*, Plaintiffs have not presented any evidence to demonstrate a frustrations of expectations regarding the party against whom this lawsuit was originally filed.  For the purposes of this litigation, Colonial has admitted that Chapman was its employee when the subject accident occurred.  Colonial has also admitted a duty and breach of duty on the part of Chapman, but denies Plaintiffs' allegations with respect to damages.  There has been no evidence presented that Colonial will not be able to satisfy any judgment that is rendered in this case.

On the second issue, while Plaintiffs have presented evidence to show that Phoenix and Colonial have common corporate officers and management groups, such evidence is not sufficient to pierce

13

the corporate veil under Mississippi law.  See e.g. Buchanan v. Ameristar Casino Vicksburg, Inc., 957 So. 2d 969, 977 (Miss. 2007); Castillo v. M.E.K. Constr., Inc., 741 So. 2d 332, 340 (Miss. Ct. App. 1999).  Likewise, the Court finds that the other evidence presented by Plaintiffs including: (1) offices for Phoenix and Colonial are located in the same building, (2) the same corporate counsel represents both entities, (3) both entities share secretarial employees, and (4) Colonial informs perspective drivers of the Phoenix leasing program, is not sufficient to create a genuine issue of material fact regarding whether there has been a flagrant disregard of corporate formalities by Colonial and/or Phoenix or its principals.[2]  Based on evidence in the record, the Court finds that Plaintiffs have failed to show that there exists a genuine issue of material fact with regard to whether the corporate veil of Colonial should be pierced in this case to permit recovery against Phoenix.

The Court, having found that Plaintiffs have failed to show that there is a genuine issue of material fact with regard to (1) whether Chapman was an employee of Phoenix for the purpose of imputing liability under the doctrine of respondeat superior, (2) whether Phoenix hired, retained, supervised, and/or controlled

---

[2] The evidence in the record also shows that Phoenix was incorporated in 1989, has been in the business of leasing tractors since that time, and maintains banking accounts and finances separate from Colonial.  See Mot. for Summ. J., Ex. D (Hollow Dep.), at 10, 19-20, 29.

14

Chapman, or (3) whether the corporate veil of Colonial should be pierced to permit recovery from Phoenix, additionally finds that Phoenix is entitled to summary judgment in this case.

### IV.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant Phoenix Leasing of Tennessee, Inc., for Summary Judgment [Docket No. 229] is hereby granted, and it shall be finally dismissed from this case.  Each party is to bear their own costs.

SO ORDERED this the 14th day of December, 2007.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE